## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATIVIDAD R. CANTU, )<br>)<br>　　　　Petitioner, )<br>)<br>v. )<br>)<br>JEFF CONWAY, Warden, )<br>)<br>　　　　Respondent. )<br>_____ ) | Case No. CV-05-353-S-LMB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

　　　　Pending before the Court in this habeas corpus action are Respondent's Motion for Summary Judgment (Docket No. 21), Petitioner's Motion for Evidentiary Hearing (Docket No. 27), and Respondent's Motion to Strike Sealed Document (Docket No. 32). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket Nos. 4, 6, & 7). Having considered the arguments of the parties, and having reviewed the record in this case, the Court concludes that oral argument is not necessary. Accordingly, the Court enters the following Order.

### I.

### RESPONDENT'S MOTION TO STRIKE (Docket No. 32)

　　　　Respondent has filed a Motion to Strike Petitioner's *Ex Parte* Sealed Motion regarding payment of attorney's fees to Petitioner's former counsel . Respondent filed this

**MEMORANDUM DECISION & ORDER - 1**

motion seeking to strike two documents filed by Cantu's former counsel Sheryl Musgrove. The basis of the motion is that the filings were made without seeking advance permission to seal and there was no memorandum filed in support of the motion as required by our local rules. D. Idaho L. Civ. R. 5.3. The two filings in question are Petitioner's Ex Parte Motion for Interim Payments - Filed Under Seal, and Affidavit in Support of Petitioner's Ex Parte Motion for Interim Payments. (Docket No. 31). While Respondent is technically correct, the two motions in dispute are not substantive motions but are simply a request by counsel to be paid for legal services rendered. Ordinarily, a motion such as this presented here would be granted without prejudice and a party would be allowed to comply with the local rule. However, the documents filed here do not affect the merits of the action or any pending motions and, while technically not in compliance with the local rule in every respect, a motion was filed and was supported by an affidavit in a situation where there is no legal question or issue presented that warrants filing a brief or memorandum.

Accordingly, the papers filed under seal will not be stricken and the Respondent's motion is denied. A copy of this Order shall be sent to former counsel so that she may be aware of this ruling and take whatever action, if any, may be warranted.

## II.

### RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 21) and PETITIONER'S MOTION FOR EVIDENTIARY HEARING (Docket No. 27)

**A.    Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

    1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting

**MEMORANDUM DECISION & ORDER - 3**

indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)).  Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Id.*, 530 U.S. at 166.  However, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).  In other words, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court record was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 583 U.S. at 75, and *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies to subsections (d)(1) and (d)(2))).

**MEMORANDUM DECISION & ORDER - 4**

**B.     Background**

In this case Petitioner pled guilty to one count of burglary in Twin Falls County, directly after pleading to another burglary charge in Cassia County.  Only the Twin Falls conviction and sentence are at issue here.  At sentencing, the State recommended a ten-year sentence on the Twin Falls conviction to run consecutive to the sentence for the Cassia County conviction.  *After* the State made its recommendation, but *before* the state district court pronounced the sentence, Petitioner moved to withdraw his guilty plea, arguing that he thought the State had agreed to recommend a sentence of two years fixed to run concurrently with the other sentence.  The district court denied Petitioner's motion and sentenced him to a term of eight years fixed with two years indeterminate, to run consecutively with the Cassia County sentence.  *See State's Exhibit B-3.*  Thereafter, Petitioner filed a direct appeal and a post-conviction action.  *See State's Exhibits B-1 through B-6* and *C-1 through D-9*.

This Court has previously dismissed several of Petitioner's claims.  *See Order of August 8, 2006* (Docket No. 17).  Remaining at issue are the following: Claim One(a), the prosecutor failed to follow the parties' plea agreement at sentencing; Claim One(b), the state district court erred in determining that the guilty plea was not knowingly or voluntarily made;[1] Claim Two, trial counsel deliberately misled the sentencing court by stating he knew nothing of the plea agreement even though a plea agreement existed; and

---

[1] Claim One(b) was previously dismissed but it is the subject of a reconsideration request.

**MEMORANDUM DECISION & ORDER - 5**

Claim Three, trial counsel was ineffective in representing to Petitioner that a plea agreement existed, when, in fact, one did not exist.

**C.     Claim One(a)**

Claim One(a) centers on whether Petitioner's guilty plea was premised on a plea agreement.  In *Santobello v. New York*, 404 U.S. 257 (1971), the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262.  Failure to abide by the agreement is a due process violation.  *Id*.

On this claim, the Idaho Court of Appeals made the following factual findings and legal conclusions:

> Upon reviewing the record, we find that the court did not abuse its discretion in denying Cantu's motion to withdraw his guilty plea.  Prior to the change of plea hearing, Cantu filled out an acceptance of guilty plea questionnaire.  In the questionnaire, Cantu stated that there was a plea agreement with the State wherein Cantu would be sentenced to "2 year[s] -- running together with Cassia County," but that he understood that the district court was not bound to follow such a sentence.  This supports Cantu's assertion that there was a plea agreement.  Two weeks later, however, at the change of plea hearing, the parties advised the court that there was no plea agreement and that the State was free to make an open recommendation at sentencing.  Cantu was present when the court was told that there was no plea agreement; he raised no objection and entered his guilty plea knowing of this representation to the court.  Furthermore, when questioned by the court, Cantu did not mention any plea agreement but rather acknowledged that he understood that the court could enter a sentence of up to ten years in prison.  Cantu also stated that he had not been promised anything with regard to his sentence.  When the court questioned Cantu about the questionnaire, he did not mention the existence of a plea agreement, instead stating that he had no questions about it.  He also stated that he was pleading guilty of his own free will and volition.

**MEMORANDUM DECISION & ORDER - 6**

> We conclude that this record does not support Cantu's contention that a plea agreement existed. Because there was no plea agreement, Cantu did not present the court with a just reason for withdrawal of his guilty plea. It is evident from the record that Cantu entered his plea freely and voluntarily and, accordingly, that the district court did not err in denying his motion to withdraw the plea.

*State's Exhibit B-3*, at p. 3.

This Court presumes that these findings of fact are correct unless Petitioner brings forward clear and convincing evidence to the contrary. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). Here, Petitioner proffers new evidence that he wishes the Court to consider, particularly, his own testimony that he specifically asked counsel whether there was a plea agreement before he signed the "Acknowledgment of Consequences of Guilty Plea," and that counsel had stated that there was a plea agreement. *See State's Exhibit C-4*, at pp. 4-5.[2]

Strict rules govern the introduction of new evidence in federal habeas corpus proceedings. If a petitioner wishes to bring new evidence *and* he failed to develop the factual basis of his claim in state court because of "lack of diligence or some greater fault, attributable to" him or his counsel, then he must meet the requirements of § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 432 (2000). The *Williams v. Taylor* Court explained what it means to "fail to develop the facts" in state court:

---

[2] Petitioner made this allegation in his post-conviction briefing, not on direct appeal. On post-conviction review, he provided the "Acceptance of Guilty Plea Questionnaire" form, signed and dated on March 13, 2002, and the "Acknowledgment of Consequences of Guilty Plea" form, signed and dated on March 18, 2002. *See State's Exhibit A-1*, at pp. 28-36 and 37-55. He alleged that he did not sign the second document until counsel assured him that a plea agreement had been reached. Petitioner provided no further evidence in support of this allegation.

**MEMORANDUM DECISION & ORDER - 7**

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful.

529 U.S. at 436.

Here, Petitioner has not shown diligence in attempting to bring this evidence in state court. Petitioner has not explained why he could not have brought this information that was within his personal knowledge to the state district court's attention at the time that court was considering his oral motion to withdraw his guilty plea. If he had done so, his testimony would have been a part of the record on direct appeal.

Because he was not diligent, Petitioner must meet the requirements of § 2254(e)(2) if he wishes the Court to consider this evidence in support of Claim 1(a). Section 2254(e)(2) requires a showing that his claim is based either on a new retroactive rule of constitutional law or on a factual predicate that could not have been previously discovered through the exercise of due diligence, *and* that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* § 2254(e)(2)(A)&(B). Petitioner clearly has not shown that the claim is based on a new retroactive rule of constitutional law or on a factual predicate that could not have been discovered, as it is his own testimony of events that he wishes to bring.

**MEMORANDUM DECISION & ORDER - 8**

Therefore, this Court may not consider Petitioner's new factual assertion to determine whether the Idaho Court of Appeals' factual determination on direct appeal was objectively unreasonable in light of the evidence presented in state court.

Alternatively, the Court can construe this as a conflict of interest situation, where counsel may not have raised or allowed Petitioner to raise this issue at the hearing because it reflected poorly on counsel. It is arguable that a conflict of interest may be an exception to having to meet the standard of § 2254(e)(2), under the theory that when a conflict is present, counsel is no longer acting on behalf of the client but for counsel's own self-interest. *Cf. Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000).[3] However, even if the Court considers Petitioner's new testimony in addition to the state court record, Petitioner's evidence is not clear and convincing.

The Court finds and concludes that the record before the Idaho Court of Appeals on direct appeal supports its factual finding that there was no plea agreement between

---

[3] In *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000), in a cause and prejudice setting, the court held that an attorney conflict of interest can be cause when that conflict causes a petitioner to be denied access to habeas proceedings because the attorney interfered with his right to petition. In that case, Manning, the indigent client, instructed the attorney to file a direct appeal. The attorney failed to file a direct appeal because of a clerical error in the public defender's office. The attorney then told Manning that he could not appeal the conviction but that his only option was to file a motion to reconsider the sentence. The attorney did not tell Manning that he could also file a state post-conviction petition claiming ineffective assistance of counsel for failure to file a direct appeal, which was almost certain to be successful. *Id.* at 1131-32. The Ninth Circuit found that a clear conflict existed because the attorney had an interest in protecting himself from the damage such a post-conviction action would have to his reputation, his malpractice liability, and his bar standing. *Id.* at 1134. In such a case, prejudice is presumed. *Id.* at 1135.

**MEMORANDUM DECISION & ORDER - 9**

Petitioner and the State.  Petitioner's counsel stated at the change of plea hearing on April 1, 2002, that "there was no plea agreement or sentencing agreement," and that "[w]e're going to be asking for concurrent time."  To clarify what "we" meant, the Court asked, "So, it's an open recommendation; is that correct?"  The prosecutor stated, "That's correct, sir."  *State's Exhibit A-2*, at pp. 4-5.  While Petitioner may have had a limited understanding of what the foregoing exchanges meant, defense counsel and the prosecutor did not. The Court later asked Petitioner, "And your attorney indicated *he's* going to ask that I run this concurrent with the sentence that you will receive in Cassia County.  Do you understand that I do not have to do that?"  *Id*. at p. 6 (emphasis added).

Petitioner made no corrections to and had no questions about any of the these statements, even though they conflicted with what he had written on the Acceptance of Guilty Plea Questionnaire ("Questionnaire") on March 13, 2002.  *See id.*  There is *nothing* in the change of plea hearing transcript suggesting that the *State* was going to recommend *either* a two-year sentence *or* a concurrent sentence.

In accordance with defense counsel's and the prosecutor's representations that no plea agreement existed at the April 1, 2002, hearing, the State presented a recommendation at the April 29, 2002, hearing, that was not consistent with the alleged plea agreement. Rather, it made a recommendation consistent with its earlier representation to the state district court that it was free to make an "open recommendation." *Id*. at p. 16. Defense counsel did not object to the ten-year recommendation as a breach of the plea

**MEMORANDUM DECISION & ORDER - 10**

agreement. In this second hearing, it is again clear from the transcript that both lawyers understood there was no plea agreement.

As soon as Petitioner heard the State's sentence recommendation, he notified his attorney that he understood that there was a plea agreement that prevented the prosecutor from recommending more than a two-year sentence. *State's Exhibit A-2*, at p. 26. Again, at that time, neither Petitioner's attorney nor the prosecutor acknowledged that there was a plea agreement or sentencing agreement. Rather, Petitioner's attorney stated:

> There is a conflict in my recollection versus his as to the advice I gave to him and to the information I provided to him.
> .
> This matter did go to preliminary hearing. Before the preliminary hearing I believe the state offered a sentence of two to six to serve. Mr. Cantu went to hearing. I believe that I explained to him that the result of going to hearing was that that offer was withdrawn.
>
> Mr. Cantu pleaded guilty on April the 1st of this year. My understanding is that his belief was that he would still be looking at the two to six recommendation from the state if he were to plead guilty. And my understanding also is that he now wishes to withdraw his guilty plea because he pleaded guilty under the misapprehension that that is what the state would recommend.

*State's Exhibit A-2*, at p. 26.

Petitioner's argument that there are many references to settlement *negotiations* in the record is unconvincing. Petitioner shows that the State made an offer on February 20, 2002 (prior to the preliminary hearing) that expressly expired on February 21, 2002, at 3:00 p.m., *see Suzanne Craig Affidavit*, Exhibit 1 (Docket No. 26-3), that Petitioner made a counter-offer on or about March 3, 2002, and that the parties were still contemplating

**MEMORANDUM DECISION & ORDER - 11**

settlement on March 18, 2002, *see Petitioner's Statement of Facts*, at pp. 2-4 (Docket No. 26-2). There is no written or oral evidence in the record to establish that the counteroffer was accepted by the State. There is no representation to the Court by either lawyer that there is an agreement, and no recitation on the record that the parties bound themselves to a plea agreement.

Finally, Petitioner asks the Court to consider his new argument that the existence of a plea agreement is evidenced by Petitioner's counsel's signature on the Questionnaire. Near defense counsel's signature, the form bears a certification that "I have fully and completely gone through and discussed each question herein with my client, and have FULLY AND TRUTHFULLY answered each question posed to me." *State's Exhibit A-1*, at p. 55. On direct appeal, Petitioner did *not* present this argument to the state district court or the Idaho Court of Appeals and did not draw either state courts' attention to counsel's signature on the form as evidence that a plea agreement existed. However, the form itself was a part of the record available to both courts.

Here, it need not be determined whether this part of Petitioner's claim is procedurally defaulted, because the evidence in the record is not enough to overcome the other evidence in the record that there was not a binding plea agreement. This evidence, when cumulated with Petitioner's other "new" statement that counsel told him there was an agreement, is not enough to overcome (1) defense counsel's and the prosecutor's consistent statements and actions in open court throughout the proceedings showing that

**MEMORANDUM DECISION & ORDER - 12**

there was no agreement, and (2) the absence of any written agreement or transcript recitation demonstrating the existence of an agreement binding both parties to a certain course of action at sentencing.

Whether the record can be construed to show that Petitioner misunderstood that there was a plea agreement is a different claim discussed below. Here, the precise question is whether the evidence shows that defense counsel and the prosecutor actually came to a binding agreement that the guilty plea was to be exchanged for a two-year concurrent sentence recommendation.

Based on all of the foregoing, the Court concludes that the Idaho Court of Appeals' factual determinations were not objectively unreasonable in light of the evidence presented in the state-court proceeding. Further, the decision is not objectively unreasonable even if the Court considers Petitioner's "new" evidence, because it does not rebut the findings of fact in a clear and convincing manner. Accordingly, Petitioner's *Santobello* claim is denied on the merits.

**D.     Claim Two**

Claim Two is that trial counsel deliberately misled the sentencing court by stating he knew nothing of the plea agreement with his client, even though one existed. Because the Court has concluded that the Idaho Court of Appeals made a factual finding that there was no plea agreement and has concluded that such a factual determination was not objectively unreasonable in light of the evidence presented, Claim Two necessarily fails.

**MEMORANDUM DECISION & ORDER - 13**

### E.     Claim Three

The remaining portion of Claim Three is that Petitioner's guilty plea was not knowing and voluntary because his counsel was ineffective in representing to him that a plea agreement existed when, in fact, one did not exist.  The United States Supreme Court has held that the validity of a guilty plea turns on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held that a plea is not knowing and voluntary if it was the result of defense counsel's advice amounting to ineffective assistance of counsel.  *Id*. at 59.  This claim requires a showing of a reasonable probability that the defendant would not have pled guilty but for counsel's erroneous advice.  *Id*.

Petitioner brought this claim in his post-conviction review petition.  The state district court summarily denied the claim based on the written record, without an evidentiary hearing.  *See State's Exhibit C-1*, at pp. 48-50.  On appeal of the post-conviction matter, the Idaho Court of Appeals rejected this claim by relying on its earlier opinion:

> This Court determined in Cantu's direct appeal that a plea agreement did not exist and that his plea was given knowingly and voluntarily.  Cantu has not provided any additional evidence with his application for post-conviction relief that was not available to this Court when addressing Cantu's direct appeal.  Considering by reason of res judicata that a plea agreement did not exist and Cantu's plea was given knowingly and voluntarily, Cantu cannot now claim, in a conclusory statement, that he would not have pled guilty had he known a plea agreement did not exist.  Therefore, Cantu fails to demonstrate ineffective assistance of counsel and,

**MEMORANDUM DECISION & ORDER - 14**

    thus, that the district court erred in dismissing his application for post-conviction relief.

*State's Exhibit D-5*, at p. 4.

    While the Court of Appeals noted that Petitioner had not provided additional evidence on post-conviction review, this Court contrarily finds that Petitioner did, in fact, provide additional evidence that could have been further developed had he been given the opportunity to do so.  A direct appeal is to be distinguished from a post-conviction matter because the only evidence before the appellate court on direct appeal is the trial court record.  In contrast, "[i]neffective assistance of counsel claims, unlike most claims alleging error at trial and sentencing, are best presented for the first time in collateral proceedings," because the record can be further developed through discovery and an evidentiary hearing.  *See Bragg v. Galaza*, 242 F.3d 1082, 1090 n.7 (9th Cir. 2001).

    Here, Petitioner alleged in his verified petition: "Attorney for the petitioner gave false and misleading information to secure a quick resolve and plea from the petitioner." *State's Exhibit C-1*, at p. 7.  In Petitioner's second memorandum in opposition to the state's motion to dismiss, Petitioner's new counsel argued:

> Mr. Cantu's attorney failed to fully and completely inform the Petitioner he would be pleading guilty with no plea agreement in place.  Mr. Cantu outlines in his affidavits, that his Public Defender actually confirmed the existence of a plea agreement with him, before he signed the Acceptance of Guilty Plea Questionnaire form that was submitted it to the Court. (See Affidavits of Natividad Cantu.)  Reasonable standards of conduct by counsel would be to fully inform Mr. Cantu that the plea agreement had been withdrawn and that there were no deals on the table.

*State's Exhibit C*-4, at p. 3.[4]  Petitioner further alleged that he specifically asked counsel whether there was a plea agreement before he signed a second form, the "Acknowledgment of Consequences of Guilty Plea," and counsel had stated that there was a plea agreement, *State's Exhibit C-4*, at pp. 4-5.  Petitioner also submitted an affidavit stating it was his understanding that there had been a plea agreement based on his counsel's advice.  *Attachment to State's Exhibit C-4, Affidavit of Petitioner*, at ¶ 15.  Notwithstanding these factual references, the petition was dismissed without further development of the record.

**F.      Petitioner's Motion for Evidentiary Hearing (Docket No. 27)**

In *Schriro v. Landrigan*, 127 S.Ct. 1933 (U.S. 2007), the Supreme Court clarified that the decision to grant an evidentiary hearing in federal habeas corpus cases governed by AEDPA "is left to the sound discretion of district courts."  *Id*. at 1940.  The *Landrigan* Court further explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Id*. (internal citations and punctuation omitted).

---

[4] The state court record before this Court does not appear to contain an affidavit of Petitioner other than the February 17, 2004 Affidavit attached to State's Exhibit C-4, even though Petitioner's argument apparently references a different affidavit.

**MEMORANDUM DECISION & ORDER - 16**

Here, because the state court did not grant Petitioner's request to hold an evidentiary hearing on the ineffective assistance of counsel claim in the post-conviction action, there is insufficient evidence in the record before this Court to determine whether Petitioner should be granted relief on Claim Three. Therefore, Petitioner's Motion for an Evidentiary Hearing to allow Petitioner to further develop the facts supporting his claim is granted.

### G.     Reconsideration of Claim 1(b)

Petitioner has requested this Court to reconsider its decision that Claim 1(b) is procedurally defaulted. Claim 1(b) asserts that the guilty plea was not knowing and voluntarily entered due to Petitioner's misunderstanding, apart from any ineffective assistance of counsel. It is unclear whether such a circumstance would implicate a constitutional right. In *McMann v. Richardson*, 397 U.S. 759 (1970), the Court held that where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Id*. at 771. In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Court held that a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id*., at 267. *Cf. Hill v. Lockhart*, 474 U.S. at 56 ("Here petitioner does not contend that his plea was "involuntary" or "unintelligent"

simply because the State through its officials failed to supply him with information about his parole eligibility date.  We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary. . . . Instead, petitioner relies on . . . ineffective assistance of counsel").  *But see Chua Han Mow v. U.S.*, 730 F.2d 1308, 1310-11 (9th Cir. 1984) (addressing claims of involuntariness *not* based on ineffective assistance, such as that the petitioner had a language barrier, that he did not understand that the government had to prove specific intent to convict him, and that he had a total lack of understanding of the Constitution).

      Therefore, even if the Court accepts Petitioner's argument that this claim is not procedurally defaulted, he may not have stated a cognizable claim given that he had the assistance of counsel at the guilty plea stage.  In addition, the Court finds that Petitioner has alleged no facts supporting an involuntariness claim that are independent of his ineffective assistance of counsel claim.   Rather, Petitioner points to his attorney as the source of his misunderstanding.  However, because Petitioner asserts that he could develop additional facts to support this claim, because no opportunity to develop the record was afforded in state court, and because the Court has determined that an evidentiary hearing is appropriate for Claim Three, the Court will reserve ruling on reconsideration of Petitioner's Claim 1(b) until after it hears the evidence at the hearing.

**MEMORANDUM DECISION & ORDER - 18**

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 21) is GRANTED in part and DENIED in part. Claims One(a) and Two(b) are denied on the merits. The Court reserves its ruling on Claims One(b) and Three pending an evidentiary hearing.

IT IS FURTHER HEREBY ORDERED that Respondent's Motion to Strike Sealed Document (Docket No. 32) is DENIED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Evidentiary Hearing (Docket No. 27) is GRANTED. Counsel shall consult and stipulate to schedule a hearing. The hearing may be set by calling courtroom deputy clerk Lynette Case at 334-9023 and advising her of available dates.

DATED: **September 7, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION & ORDER - 19**