IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| NATIVIDAD R. CANTU, | ) | |
| | ) | Case No. CV-05-353-S-LMB |
| Petitioner, | ) | |
| | ) | **FINDINGS OF FACT,** |
| v. | ) | **CONCLUSIONS OF LAW,** |
| | ) | **MEMORANDUM DECISION** |
| JEFF CONWAY, Warden, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

An evidentiary hearing was held in this case on November 17, 2007. Petitioner Natividad

R. Cantu ("Petitioner") was represented by counsel Elisa Massoth, and Respondent Jeff Conway

("Respondent") was represented by John McKinney. The parties have filed their post-hearing

memoranda and the transcript has been prepared. The parties stipulated to the admission of all

exhibits at the evidentiary hearing. (Transcript ("Tr."), p. 11:10-20.) The Court having reviewed

the record, having given careful consideration to the evidence presented at the evidentiary

hearing, and having considered the arguments of counsel, this Memorandum Decision and Order

granting habeas corpus relief is now entered.

## I.

## BACKGROUND

In this case Petitioner pled guilty to one count of burglary in Twin Falls County, directly

after pleading guilty to another burglary charge in Cassia County. Only the Twin Falls

conviction and sentence are at issue here. During the sentencing hearing, the State recommended

a ten-year sentence on the Twin Falls conviction to run consecutively with the sentence for the Cassia County conviction. *After* the State made this recommendation, but *before* the state district court pronounced the sentence, Petitioner moved to withdraw his guilty plea, arguing that he thought the State had agreed to recommend a sentence of two years fixed to run concurrently with the Cassia County sentence. The district court denied Petitioner's motion and sentenced him to a term of eight years fixed with two years indeterminate, to run consecutively with the Cassia County sentence. (State's Lodging B-3.) Petitioner's state direct appeal and post-conviction action were unsuccessful. (State's Lodgings B-1 through B-6 and C-1 through D-9.)

Petitioner next filed this federal habeas corpus action to challenge his conviction and sentence (Docket No. 1). The Court appointed counsel for Petitioner. Early in this action, all of Petitioner's claims with the exception of One(b) and Three were dismissed or denied (Docket Nos. 17 & 40). Claim One(b) is that the state district court violated Petitioner's Fourteenth Amendment due process rights by failing to determine that the guilty plea was not knowingly or voluntarily made based on Petitioner's misunderstanding of the existence of a plea agreement.[1] Claim Three is that Petitioner's Sixth Amendment right to counsel was violated when his counsel allowed him to enter a guilty plea with the understanding that a plea agreement existed when, in fact, one did not exist.

Petitioner was permitted to further develop the facts supporting his claim because in a prior ruling the Court held that the state court unreasonably failed to permit him the opportunity to do so in state court. (Docket No. 40, p. 15.)

---

[1] Claim One(b) was previously dismissed on procedural default grounds but it is the subject of a reconsideration request.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 2

## II.

## FINDINGS OF FACT

Based upon the evidence contained in the record and the evidence presented at the evidentiary hearing, the following findings of fact are made.  To the extent that evidence in the record does not support certain allegations, it will not be included in these findings or otherwise referenced herein.  The failure to mention an act, event, or series of events in these findings is an indication that the evidence does not support a finding of fact.

**Background Facts**

1.  Petitioner was educated through the sixth grade in formal school and then continued his education at the "boy's farm" and while incarcerated as an adult. He completed his GED while incarcerated at Cottonwood.  (Transcript ("Tr"), p. 9:19-25; 10:1-4.)

2.  Petitioner speaks English as a second language.  He felt comfortable enough at the evidentiary hearing in this case to listen to and respond to the questions in English, but had an English-to-Spanish translator by his side in the event he did not understand a question or word.  (Tr., p. 7:11-17.)  It does not appear that Petitioner had a Spanish-speaking translator at any of his Twin Falls County case hearings.

3.  Petitioner's counsel, John Hansen, recalled that he did not have a language barrier when speaking with Petitioner, and an interpreter was not needed.  (Tr., pp. 117:24-25; 118:1-11.)

4.      In the Cassia County case, on February 1, 2002, Petitioner entered a guilty plea to the burglary charges pursuant to a plea agreement requiring, in part, that the state recommend a sentence of three years fixed, with four years indeterminate, for a unified seven-year sentence. (Exhibits 18, 19; Tr. 12:5 to 13:7.) Pursuant to an amendment to the agreement, the Cassia County prosecutor agreed that if Petitioner fulfilled the terms of a cooperative agreement with local law enforcement, the state would recommend two years fixed instead of three, and dismiss the persistent violator charge. (Exhibit 18; Tr. p. 12:8-25 to 13:1-18.)

5.      Between the change of plea hearing date and the sentencing hearing date in the Cassia County case, and before Petitioner could complete the terms of the cooperative agreement with Cassia County law enforcement, he was arrested and charged with burglary in Twin Falls County for stealing $101.94 worth of DVDs at Target while purchasing only a writing tablet. (Exhibit 5; Tr., p. 13:19-20.)

6.      Public Defender John Hansen was appointed to represent Petitioner in the Twin Falls Case.[2]

7.      One of Petitioner's first communications with Mr. Hansen was to ask him to approach the prosecutor with a plea bargain offer consisting of Petitioner's agreement to plead guilty to petit theft. (Tr., p. 19:1-25; 20:1-7.)

8.      On February 20, 2002, two days before Petitioner's preliminary hearing in his Twin Falls case, the prosecutor faxed Mr. Hansen a written offer sheet, offering to agree to a State's recommendation of a sentence of two to six years and a promise

---

[2] Petitioner had separate counsel in his Cassia County case.

not to file "habitual criminal enhancements" in return for Petitioner's guilty plea
before the preliminary hearing. The written offer had an expiration date of
February 21, 2002. (Exhibit 101; Tr., p. 119:2-21.)

**Twin Falls Preliminary Hearing of February 21, 2002**

9.    Mr. Hansen discussed the plea offer with Petitioner when he arrived at court for
the preliminary hearing, but Petitioner never saw the plea offer sheet. Petitioner
understood the plea offer to mean that the State would recommend that he would
serve two years and have six on the back of that, for a total of eight years. (Tr., pp.
21:12-25; 22:2-17.) Mr. Hansen understood the offer to mean that Petitioner
would serve two years and have four, not six, years indeterminate, and that it
would be consecutive to the Cassia County sentence. (Exhibit 101; Tr. 119:15-
25; 120:1-3.)

10.   Mr. Cantu refused the plea offer and chose to have the preliminary hearing. (Tr.,
p. 22:23-25.) He again asked Mr. Hansen to pursue a petit theft offer. (Tr., p.
23:1-8.)

11.   At the time of the preliminary hearing, Petitioner understood that he had rejected
the State's offer, and the State had rejected his offer. (Tr., p. 23:9-15.) At that
point he felt scared, because he knew his past was "not very good," and he
"figured [he] might get a lot of time." (Tr., p.23:20-22.)

12.   On February 25, 2002, Petitioner wrote a note saying "I really need to speak with
my lawyer. Very, very important that I do at least before I go to court on 3-4-02."
(Exhibit 8.) Petitioner wished to speak to his lawyer about proposing "another

deal"--offering to plead guilty to a felony for a two-year fixed sentence to run

concurrently with the Cassia County sentence. (Tr., pp. 24:15-25; 25:1-4; 123:9-

14 & 18-21.)

## Twin Falls Arraignment of March 4, 2002

13.    March 4, 2002, was the next communication Petitioner had with Mr. Hansen, at

the arraignment.  On that date, he asked Mr. Hansen "to approach the State with

an offer of two years running together with [his] Cassia County case." (Tr., p.

26:1-10.)  At that time, Petitioner knew the State's two-to-six-years offer was no

longer open because he had turned it down prior to the preliminary hearing.  (Tr.,

p. 27:13-19.)  He knew his current offer was a new offer.  (Tr., pp. 27:20-25;

28:1-4.)  At the hearing, Mr. Hansen and the prosecutor spoke about the offer, and

Mr. Hansen told Petitioner that the State was going to consider it.  (Tr., p. 28:5-

13.)  Mr. Hansen told the judge at the hearing, "We may be able to negotiate this

with the State. . . ."  (Exhibit 102, p. 4.)

14.    On March 4, 2002, Petitioner wrote a letter to counsel asking for a plea bargain of

two years running concurrent with the Cassia County case and asking for the

sentencing to be expedited so that it would be held before the Cassia County

sentencing on March 14.  (Exhibit 8, Tr. p. 25:13-25.)  Petitioner testified he knew

there was no agreement in place on that date.  (Exhibit 2; Tr., p. 29:1-4.)

15.    Mr. Hansen knew that Petitioner wanted a "speedy resolution" of his case.  (Tr., p.

133:19-22.)  Petitioner thought if he could obtain a two-year agreement in the

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 6

Twin Falls case, he could get the two-year deal in Cassia County. (Tr., p. 125:29:5-12.)

16. On March 8, 2002, Petitioner wrote a second letter to Mr. Hansen about the plea agreement in which he indicated that no plea agreement had been reached at that time. "If they go with the plea bargain . . . ." "If they agree. . . ." (Exhibit 3.) Petitioner testified that he knew no agreement was in place at that time. (Exhibit 3; Tr., p. 29:20-25.)

**Twin Falls Jail Visit of March 13, 2002**

17. On March 13, 2002, Mr. Hansen met with Petitioner at the jail. At that time, Mr. Hansen brought two forms: (1) Acceptance of Guilty Plea Questionnaire ("guilty plea form"), and (2) Acknowledgment of Disclosure of Consequences of a Plea of Not Guilty and a Plea of Guilty ("plea consequences form"). (Exhibit 105 & 106; Tr., p. 30:7-21; 124:23 to 128:9; 129:4-21.)

18. The guilty plea form and plea consequences form were developed by Judge Higer for use in his court room on a change of plea. Judge Higer would have counsel provide the forms to their clients prior to the Judge accepting the guilty plea. Judge Higer would want to see that the forms had been filled out, that each page had been signed by the client, and that counsel had signed the last page. (Exhibits 105 & 106; Tr., p. 1-19.)

19. Before giving Petitioner the guilty plea form at the jail, Mr. Hansen filled out Petitioner's name and the case number in the caption. (Tr., p. 126:13-24.)

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 7

20.     On page 13 of the guilty plea form, the following provisions appear under

"Section Six." (Petitioner's answers are italicized below to indicate where his

handwriting appears on the original, and word "participate" was underlined in

handwriting on the original):

> (58)    Is there a plea bargain or plea agreement in this case? _yes_
>
> **Answer the remaining questions in this section ONLY if there
> is a plea agreement or plea bargain in this case. The terms
> plea agreement and plea bargain mean the same thing.**
>
> (59)    Do you understand there is a plea agreement in this case?
> _yes_
>
> (60)    Did you participate in this plea agreement process or were
> you just told this is the agreement? _yes_
>
> (61)    Did you read and sign this written plea agreement? _____
>
> (62)    Tell me your understanding of the plea agreement. _2 year -
> Running together with Cassia County_
>
> (63)    Do you agree with this plea agreement, meaning, is it
> satisfactory to you? _yes_.

(Exhibit 105.)

21.     Petitioner signed all but two pages of the guilty plea form. The last page of the

form bears Petitioner's signature, dated 3-13-02. (Exhibit 105, p. 19.) On the last

page is a "Certificate of Lawyer," which is signed by John Hansen. It reads:

> I hereby certify that I am the lawyer for the
> defendant named herein, that I have fully and
> completely gone through and discussed each
> question herein with my client, and have FULLY
> AND TRUTHFULLY answered each question
> posed to me.

(*Id.*)

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 8

**Twin Falls Status Hearing of March 18, 2002**

22.   On March 18, 2002, Mr. Hansen and Petitioner attended a status hearing.   At

hearing, Mr. Hansen told the judge:

> Your Honor, I've handed the form for a
> written plea of guilty to Mr. Cantu. *My anticipation*
> *of this case it will settle* [sic].  In candor to the
> Court, there's a Cassia County case that is set for
> sentencing on April 4.  I believe that we can get the
> presentence investigation from that case.  I would
> ask the court to set this matter for April 1st for a
> change of plea hearing.

(Exhibit 107, p. 2 (emphasis added); Tr., p. 41:16-20.)  The plea consequences

form was signed and dated by Petitioner and Mr. Hansen on this date.  (Exhibit

106.)

23.   Petitioner believed that at this status hearing, the state agreed to the 2-year plea

agreement.  (Exhibit 13, ¶ 8; Tr., p. 41 .)

24.   Mr. Hansen testified that he asked for a change of plea because he anticipated that

they would be able to reach a settlement prior to the next court date.  (Tr., p.

133:19-22.)

**Twin Falls Change of Plea Hearing of April 1, 2002**

25.   On April 1, 2001, Petitioner and Mr. Hansen attended the change of plea hearing.

When the judge asked the two lawyers whether there was a plea agreement, the

defense attorney John Hansen said "*I don't believe there is*, Your Honor.  We're

going to be asking for concurrent time with Cassia County Case No. CR 01-1029"

(emphasis added)   The Court asked, "So it's an open recommendation; is that

correct?" The prosecutor replied, "That's correct." (Exhibit 108, pp. 4-5.)

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 9

26.    By the time Petitioner had arrived at the change of plea hearing, he had full

confidence that there was a plea agreement in place, cemented by the guilty plea

forms. Even when his attorney told the judge that there was no plea agreement

and "it was an open recommendation," Petitioner "thought the deal was taken care

of." He thought "everything was Okay." He testified, "I thought my lawyer had

my back and everything so I just -- that court time, I wasn't -- I wasn't focused

which I should have been." (Tr., p.94:14-22.) The judge never asked Petitioner if

there was a plea agreement.

27.    Mr. Hansen personally submitted to the Court the two written guilty plea forms

signed by Mr. Cantu and Mr. Hansen. (Tr., p. 170:8-12.) Mr. Hansen admits that

he knew there was no plea agreement in place, but that the guilty plea documents

he handed to the court indicated there was such an agreement. (Tr., pp. 131:13-

24.)

28.    Mr. Hansen testified that had he known that the form indicated there was a plea

agreement, he would not have handed it to the judge in that condition. (Tr., p.

131:17-24.)

29.    Judge Higer asked Petitioner if he had read and completed the guilty plea form, if

he had fully understood it, if he had reviewed it with his attorney, if its contents

were true, and if he had any questions about it. (Exhibit 108.) The judge did not

review the contents of the guilty plea form with Petitioner in court. (*Id.*) The

judge did not ask Petitioner if he thought he had a plea agreement. (*Id.*) At the

hearing, Mr. Hansen asked for an expedited sentencing hearing date in the Twin Falls case. (*Id.*)

30.    From the totality of Petitioner's explanations, the Court finds that Petitioner thought the words "on the table" meant there was either an offer to be considered or an offer that had been accepted and not withdrawn. (Tr., p. 87:17-25.)

31.    Petitioner thought his counsel's words, "My anticipation, this case, it will settle," meant "it was a done deal" and "it was going to be settled." (Tr., p. 91:1-7.)

32.    Petitioner heavily relied on counsel during Mr. Hansen's representation of Petitioner, and Petitioner relied heavily on the guilty plea forms provided by and accepted by Judge Higer.

33.    When the judge said to Petitioner, "And your attorney indicated he's going to ask that I run this concurrent with the sentence that you will receive in Cassia County," Petitioner thought the judge meant that the prosecuting attorney was also going to ask that the sentences run concurrent, pursuant to what he thought was their plea agreement. Petitioner's understanding is supported by the note Petitioner wrote to his attorney after the hearing, *supra*, "The judge even said himself that he didn't have to run them together like what the prosecuting attorney was going to recommend. That means that there was a plea bargain. . . ." (Tr., p. 96:16-25; 97:1-14; Exhibit 7, p. 1.)

34.    Petitioner did not associate the plea agreement as the type of "promise" the judge was asking about at sentencing, and so he said, "no." (Tr., p. 104:5-20.)

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 11

35.    Petitioner knew the judge was not bound by a plea agreement, but, in his past

experience, judges had always followed the plea agreement. (Tr., p. 104:21-25;

105:1-25; 106:1-14; 59:11-15.)

## Cassia County Case Sentencing Hearing of April 11, 2002

36.    In the Cassia County case, on April 11, 2002, Petitioner was sentenced to three to

seven years. (Exhibit 20.)

## Twin Falls Sentencing Hearing of April 29, 2002

37.    On April 29, 2002, Petitioner's sentencing hearing in the Twin Falls case was

held. At that time, Petitioner understood that he had no two-to-six year

agreement. (Tr., p. 72:1-8.)  Rather, he thought there was an agreement for two

years running together with the Cassia County sentence. (Tr., p. 72:9-15.)

38.    The prosecutor recommended a ten-year maximum sentence, and stated:

> The defendant in this case was originally charged
> with burglary, as well as a persistent violator
> enhancement.  The state dropped that enhancement
> as a concession for his plea of guilty in this case.
> Therefore, the defendant, even though we're asking
> for the maximum sentence consecutive in this case,
> we believe that we've given the defendant a
> concession for his entry of a plea of guilty without
> having the state having [sic] to come forward and
> put on testimony today.

(Exhibit 110, pp. 16-17.)  This is a misstatement of the procedural history of the

case.  Petitioner was never charged with a persistent violator enhancement.

(State's Lodging A-1.)  However, when the prosecutor first made an offer of

settlement, "not filing a persistent violator enhancement" was part of that offer.

(Exhibit 1.)

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 12

39.    As soon as Petitioner heard the State's sentence recommendation at the sentencing

hearing, he notified Mr. Hansen that he understood that there was a plea

agreement that prevented the prosecutor from recommending more than a two-

year sentence. (State's Lodging A-2, at p. 26; Tr., pp. 164:14-25; 165:1-7.) When

the prosecutor had finished, Mr. Hansen stated that Petitioner wished to withdraw

his guilty plea:

> There is a conflict in my recollection versus
> his as to the advice I gave to him and to the
> information I provided to him.
>
> This matter did go to preliminary hearing.
> Before the preliminary hearing I believe the state
> offered a sentence of two to six to serve. Mr. Cantu
> went to hearing. I believe that I explained to him
> that the result of going to hearing was that that offer
> was withdrawn.
>
> Mr. Cantu pleaded guilty on April the 1st of
> this year. My understanding is that his belief was
> that he would still be looking at the two to six
> recommendation from the state if he were to plead
> guilty. And my understanding also is that he now
> wishes to withdraw his guilty plea because he
> pleaded guilty under the misapprehension that that
> is what the state would recommend.

(Exhibit 110, pp. 25-26.)

40.    The judge told Petitioner that because he had signed the "Guilty Plea

Questionnaire," he could not withdraw his plea:

> Well, Mr. Hansen, in that respect, as you
> know, and Mr. Cantu, as you know, the court had
> you fill out and you filled out the Acceptance of
> Guilty Plea Questionnaire and the Consequences of
> Plea Questionnaire, and the court inquired of you
> and advised you if the consequences in this case of

up to ten years in the state penitentiary on a guilty
plea.
        You signed the documents freely and
voluntarily, as you advised me at the time of this
entry of plea. The court knows of no reason, even
as stated by Mr. Hansen, those reasons are not
sufficient for this court to allow you to withdraw
that guilty plea.

(Exhibit 110, pp. 26-27.)

41.    The first time Mr. Hansen heard that Petitioner thought there was a plea

agreement was when Ms. Craig, the prosecutor, first asked for a sentence of ten

years during the sentencing hearing. (Tr., p. 139:13-23.)

42.    Because of a heavy caseload, Mr. Hansen did not devote enough time to

reviewing the guilty plea form after Petitioner had signed it and did not carefully

review every written answer before Mr. Hansen himself signed it. (Tr., p. 132:11-

23.)

43.    Mr. Hansen testified that there was no meeting of the minds between himself and

his client regarding the repercussions of the guilty plea. (Tr., p. 156:7-10.) Mr.

Hansen knew that Judge Higer had a reputation for pronouncing harsh sentences,

such that he had earned the nickname, "Hang 'em Higher." (Tr., p. 161:13-23;

Exhibit 11.) Mr. Hansen believed the benefit of the bargain Petitioner was

receiving in pleading guilty was an expeditious resolution of his case. (Tr., p.

163:1-5.)

44.    The totality of the circumstances show that at the sentencing hearing, Mr. Hansen

was genuinely shocked by Petitioner's belief that there was a plea agreement, and

Petitioner was genuinely shocked that there was not such an agreement. This

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 14

reflects that there was a misunderstanding or miscommunication between attorney and client, rather than any deliberate acts of deception on either one's part.

45.   Based on the foregoing facts, the Court finds that neither the sentencing court nor Mr. Hansen knew that the guilty plea form to which the court was referring stated that there was a plea agreement in the case, contrary to the averments made by counsel to the court. Neither the court nor counsel made any effort to find out exactly what information was written on the guilty plea form when Petitioner asked to withdraw his guilty plea.

46.   After refusing to allow Petitioner to withdraw his guilty plea, the Court sentenced Petitioner to eight years fixed with two years indeterminate, to run consecutively to the Cassia County case. (Exhibit 110, p. 35.)

47.   The Twin Falls conviction was Petitioner's sixth felony conviction. (State's Lodging A-3, p.2.)

48.   On April 29, 2002, directly after the sentencing hearing, Petitioner wrote a note to Mr. Hansen through the prison correspondence system:

> I need to know if there was a plea offer on paper form and I want my transcript of April 1st when I pled guilty. When I went to court and pleaded guilty the prosecuting attorney said that they would recommend my sentence running together with Burley's case. The judge even said himself that he didn't have to run them together like what the prosecuting attorney was going to recommend. That means that there was a plea bargain because if I knew that the deal was off, I would of [sic] not ever plead [sic] guilty to this crime.

> (Exhibit 7, p 1.)

49.     Petitioner wrote a second and third note to counsel on April 29, 2002; a fourth on

        May 1, 2002; a fifth on May 2, 2002; a sixth on May 3, 2002; a seventh on May 6,

        2002; an eighth on May 7, 2002; a ninth on May 8, 2002; and a tenth note on May

        9, 2002. (Exhibit 7, pp. 2-11.) Mr. Hansen did not respond to any of the notes,

        and they never talked again. (Tr., p. 50: 2-25; 51:1-13.)

50.     The Court finds that there was a significant lack of communication between Mr.

        Hansen and Petitioner in this case. The Court finds that Mr. Hansen is credible in

        his belief that he did not expressly tell Petitioner that there was plea agreement;

        however, it is clear from the overall record that Mr. Hansen continually

        represented to Petitioner that the case would settle, gave Petitioner the guilty plea

        forms in that posture, and, thus, led Petitioner to believe that there was a plea

        agreement in place.

51.     There is nothing showing that counsel explained to Petitioner the strength of

        pleading guilty under a plea agreement versus simply pleading guilty. There is

        nothing showing that counsel explained to Petitioner the judge's reputation of

        doling out harsh sentences. There is nothing showing that the progress of

        negotiations, or lack thereof, was reported to Petitioner. There are no explanatory

        or confirming letters to Petitioner. There were no responses to Petitioner's eleven

        inquiries about what went wrong at the sentencing hearing.

52.     Between the change of plea hearing, and the sentencing hearing, however, counsel

        did nothing to secure a written plea agreement. Counsel allowed the case to

        continue to a change of plea hearing and to sentencing with little or no

communication of the status of plea negotiations or the consequences of a guilty plea to Petitioner.

53.    The Court finds that there is sufficient evidence in the record to show that Petitioner thought the reason he was filling out the forms was because he had a plea agreement for "a two-year sentence to serve with Cassia County." (Tr., p. 103:19-21.)

54.    The Court finds that there is sufficient evidence in the record to show that there was not a meeting of the minds between Mr. Hansen and Petitioner regarding whether there was a plea agreement and whether Petitioner wished to plead guilty without a plea agreement.  For example, even after the prosecutor made her recommendation at the sentencing hearing, Mr. Hansen thought Petitioner's understanding was that there was a plea agreement for two years fixed and four years indeterminate, while at that time Petitioner thought (1) that the *prior plea offer* had been two years fixed with *six* years indeterminate, and (2) that the *current plea agreement* was for two years fixed concurrent with the Cassia County sentence.  As late as the evidentiary hearing in this case in 2007, Petitioner *still* thought the original plea offer of "2-6 to serve" meant two years fixed and six indeterminate, while at that time Mr. Hansen thought it meant two years fixed and four indeterminate.  This shows that, at the beginning *and* the end of the case, Mr. Hansen and Petitioner did not even have the same understanding of the State's original offer in the case.

55.     The prosecutor's representations to the Court about whether there was a plea agreement were less than clear. At the change of plea hearing, Judge Higer asked if there were a plea agreement or sentencing agreement. Mr. Hansen answered, *"I don't believe there is,"* an oddly equivocal response. The prosecutor did not expressly admit or deny Mr. Hansen's representation. However, at sentencing, she stated that the State had forgone a persistent violator enhancement "as a concession" for the guilty plea. (Compare Exhibit 108, pp. 4-5, with Exhibit 110, p. 16.) The Court finds the prosecutor's statements further evidence of serious miscommunication problems in this case.

56.     The evidence against Petitioner in the criminal case was that two Target employees observed Petitioner stealing DVDs; both employees physically observed him and reviewed camera surveillance showing the act.  Petitioner selected six DVDs, opened the packages with a razor blade from Target, removed the DVDs, and put them in his coat. On two previous occasions within two weeks of this event, Petitioner had been observed in the DVD section on surveillance camera, and after he left the store, empty DVD cartons were found. (State's Lodging A-3, pp. 1-2.)

57.     The Court finds that Petitioner has not been truthful in every aspect. Petitioner seems to be stretching the truth in desperation to aid his case, trying to embellish his story to make it better than it is. Some of these items are mentioned in Respondent's closing brief. Notwithstanding these items, the Court finds Petitioner credible in his belief that there was a plea agreement.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 18

58.     The Court finds Petitioner credible in his reliance upon his attorney that the plea

agreement existed and his particular reliance that his attorney would not have set a

change of plea hearing, would not have had him sign the guilty plea documents,

and would not have turned in the guilty plea documents unless the plea agreement

existed that they both had anticipated.

59.     The Court finds Petitioner generally credible in his representation that he was not

paying particular attention to the exact exchanges between the attorneys and the

judge at hearing; this was because of his great reliance on his attorney and the plea

agreement documents.  Petitioner was justified in relying upon his attorney and the

plea agreement documents because the state court placed great emphasis on the

plea agreement documents and assumed that the defense attorney had gone over

them thoroughly with the defendant so that the court did not have to.

60.     Directly after the sentencing hearing, Petitioner wrote a note to counsel in

confusion, asking for clarification of what happened at the sentencing hearing,

stating that he would not have pled guilty if he had known there was no plea

agreement. (Exhibit 7, p.1.)  The Court finds this statement of Petitioner's

intention credible, given its timing and the accompanying facts set forth above.

### III.

### STANDARDS OF LAW

**A.     Habeas Corpus Standard**

On federal habeas corpus review, the federal court analyzes the last reasoned state court

judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 2595 (1991).  In cases filed

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 19

after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)

applies.  The standard of law to be applied under AEDPA is determined by the depth of treatment

the claim was given in state court.

Where a state court *adjudicated a claim on the merits*, habeas corpus relief is available if

petitioner can show that the state court's decision:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)&(2).

Where, as here, a habeas corpus petitioner challenges the facts underlying his claim,  the

court performs an "intrinsic review" of the facts in the state court record.  *Taylor v. Maddox*, 366

F.3d 992, 999 (9th Cir. 2004). If the factual findings are "unsupported by sufficient evidence," the

factfinding "process employed by the state court is defective," or "no finding was made by the

state court at all, " the Court then performs an "extrinsic review."  In such case, the state court's

facts are *not* presumed correct and new evidence brought in federal court need *not* meet the clear

and convincing evidence standard.  *Id.*; *see* 28 U.S.C. § 2254(e)(1).  Rather, the petitioner must

prove any new facts by a preponderance of the evidence.  *Id.* at 1013 n. 16.

If the state court factfinding is deemed unreasonable under § 2254(d)(2), the petitioner

may be granted relief on that basis alone only if the factfinding is dispositive of whether his

constitutional rights were violated.  If a mixed question of fact and law is presented, Ninth Circuit

and Supreme Court case law is not entirely clear which standard to apply when new facts have

been brought into the analysis. In *Taylor v. Maddox*, the Ninth Circuit determined that whenever

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 20

a decision on the merits was reached by the state court--regardless of the factual findings--the ultimate constitutional issue should be decided under § 2254(d)(1), whether the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. *See id.*, 366 F.3d at 1008. In *Killian v. Poole*, 282 F.3d 1204 (9th Cir. 2002), the Ninth Circuit suggested that a state court "decision on the merits" made without all of the necessary facts could not really be deemed a "decision on the merits," and therefore the court should review the claims de novo rather than under the deferential standard of § 2254(d). *Id.* at 1208; *see also Green v. White*, 232 F.3d 671, 676-79 (9th Cir. 2000) (granting relief based on (d)(2) and a de novo legal analysis).

Currently pending before the United States Supreme Court is a case that may address the the question of the proper standard of law to apply under similar circumstances, *Bell v. Kelly*, 260 Fed.Appx. 599 (4th Cir. 2008), *cert. granted in part by* 128 S.Ct. 2108 (2008). That case takes up the question of whether a court must apply 28 U.S.C. § 2254(d)'s deferential standard to a claim based on new evidence that was not considered by the state court. Because the proper standard of law appears unsettled, the Court will analyze the claim under both the deferential standard of §2254(d)(1) and the de novo standard.

**B.    Ineffective Assistance of Counsel and Guilty Plea Standards**

A criminal defendant has a constitutional right to effective assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 21

objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. *Id.*

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, the court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* In the guilty plea context, "a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064 (internal citation omitted). Defense counsel has an "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

In assessing the prejudice prong in the context of guilty pleas, a reviewing court must focus on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). In *Hill*, the Court focused on the defendant demonstrating prejudice by showing "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

## IV.

## DISCUSSION OF STATE-COURT FACTUAL DETERMINATION

In Petitioner's post-conviction case, the state district court summarily denied the claim based on the written record, without an evidentiary hearing. *See State's Exhibit C-1*, at pp. 48-50. On appeal of the post-conviction matter, the Idaho Court of Appeals rejected this claim by relying on its earlier opinion:

> This Court determined in Cantu's direct appeal that a plea agreement did not exist and that his plea was given knowingly and voluntarily. Cantu has not provided any additional evidence with his application for post-conviction relief that was not available to this Court when addressing Cantu's direct appeal. Considering by reason of *res judicata* that a plea agreement did not exist and Cantu's plea was given knowingly and voluntarily, Cantu cannot now claim, in a conclusory statement, that he would not have pled guilty had he known a plea agreement did not exist. Therefore, Cantu fails to demonstrate ineffective assistance of counsel and, thus, that the district court erred in dismissing his application for post-conviction relief.

*State's Exhibit D-5*, at p. 4.

While the Court of Appeals noted that Petitioner had not provided additional evidence on post-conviction review, this Court contrarily finds that Petitioner did, in fact, provide additional evidence that could have been further developed had he been given the chance to do so. A direct appeal is to be distinguished from a post-conviction matter because the only evidence before the appellate court on direct appeal is the trial court record. In contrast, "[i]neffective assistance of counsel claims, unlike most claims alleging error at trial and sentencing, are best presented for the first time in collateral proceedings," because the record can be further developed through discovery and an evidentiary hearing. *See Bragg v. Galaza*, 242 F.3d 1082, 1090 n.7 (9th Cir. 2001).

Petitioner had alleged in his verified post-conviction petition: "Attorney for the petitioner gave false and misleading information to secure a quick resolve and plea from the petitioner." *State's Exhibit C-1*, at p. 7. In Petitioner's second memorandum in opposition to the State's motion to dismiss before the state district court, Petitioner's new counsel argued:

> Mr. Cantu's attorney failed to fully and completely inform the Petitioner he would be pleading guilty with no plea agreement in place. Mr. Cantu outlines in his affidavits, that his Public Defender actually confirmed the existence of a plea agreement with him, before he signed the Acceptance of Guilty Plea Questionnaire form that was submitted it to the Court. (See Affidavits of Natividad Cantu.) Reasonable standards of conduct by counsel would be to fully inform Mr. Cantu that the plea agreement had been withdrawn and that there were no deals on the table.

*State's Exhibit C-4*, at p. 3. Petitioner further alleged that he asked counsel whether there was a plea agreement before he signed a second form, the "Acknowledgment of Consequences of Guilty Plea," and counsel had stated that there was a plea agreement. (State's Exhibit C-4, pp. 4-5.) Petitioner also submitted an affidavit stating it was his understanding that there had been a plea agreement based on his counsel's advice. (Attachment to State's Exhibit C-4, Affidavit of Petitioner, at ¶ 15.) The most significant oversight in state court appears to be the fact that the reviewing courts ignored the blatant contradiction that the guilty plea documents relied upon by the defendant, submitted by the attorney, and accepted by the sentencing court say that a plea agreement existed, when in reality, no plea agreement existed. A further complicating factor apparent from the record before the state court is the prosecutor's representation that the State withdrew the persistent violator charges as a concession to Petitioner pleading guilty. Notwithstanding the foregoing contradictions and facts that cry out for development, the post-conviction petition was dismissed without further development of the record.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 24

Based on all of the above, the Court finds and concludes that the state court's factual process was defective. Particularly relevant here, the *Taylor v. Maddox* Court expounded on similar circumstances:

> [W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable. *See, e.g., Wiggins,* 123 S.Ct. at 2538-39; *Hall,* 343 F.3d at 983. And, as the Supreme Court noted in *Miller-El,* the state-court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim. *Miller-El,* 537 U.S. at 346, 123 S.Ct. 1029.

366 F.3d at 1001.

As a result, the state court's findings of fact are not entitled to a presumption of correctness, and Petitioner is not required to rebut the factfinding by clear and convincing evidence. Rather, the Court has made its own factual findings using the preponderance of evidence standard. Because the claim was decided by the state courts on the merits, this Court will determine whether the state court's decision on the constitutional issue was an unreasonable application of United States Supreme Court precedent under 28 U.S.C. § 2254(d)(1). Alternatively, this Court will now review the constitutional claim under a de novo standard.

## V.

### DISCUSSION AND CONCLUSIONS OF LAW ON CLAIM THREE

As mentioned above, Claim Three is that Petitioner's guilty plea was not knowing and voluntary because his counsel was ineffective in representing to him that a plea agreement existed when, in fact, one did not exist. The Court finds, and thus concludes, that Petitioner's counsel's performance was deficient and that Petitioner has shown prejudice under either a de novo or

deferential standard. As a result, Petitioner's ineffective assistance of counsel claim warrants habeas corpus relief.

## A.    De Novo Review

### 1.    Deficient Performance

Petitioner was entitled to rely on Mr. Hansen to (1) clearly communicate to him the basis for his guilty plea; (2) clearly communicate that while several offers had been exchanged, none had been formally accepted, and that the State believed it was giving a benefit by not filing a persistent violator enhancement in exchange for a guilty plea; (3) carefully read and review Petitioner's answers on the guilty plea form that was required in Judge Higer's court;(4) inform Petitioner that his answers to question 58 through 63 on the guilty plea form were incorrect, and to correct Petitioner's misunderstanding; and (5) counsel Petitioner not to plead guilty and proceed to sentencing if he did not intend to do so under the circumstances of no plea agreement in a court where the judge was known as "Hang 'em Higher." The entire course of representation was characterized by a gross lack of communication.[3] Mr. Hansen failed in significant duties required by defense counsel in his position. His failure constitutes deficient performance because such failures are not within the range of competence demanded of attorneys in criminal cases and were not reasonable under the circumstances. In this Court's opinion, Mr. Hansen is a knowledgeable attorney competent in criminal matters, but he was obviously laboring under a very heavy caseload. Nevertheless, in this particular case, counsel's performance, regardless of the reasons, was not within the range of competence demanded of a criminal defense attorney.

---

[3] *Cf. Johnston v. Hill*, 340 F.Supp. 2d 1134, 1141 (D.Or. 2004) (the court found persuasive the testimony of one attorney that he had underlined almost all of the provisions in his copy of the plea agreement, including the waiver provision, indicating that he discussed the waiver with petitioner).

2.      Prejudice

"[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 370.  A "reasonable probability" is a probability "sufficient to undermine the result." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Even something as seemingly insignificant as whether parole was a factor in the plea agreement can be grounds for prejudice if the defendant has evidence showing that "he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." *Hill*, 474 U.S. at 59, 106 S.Ct. at 371.

From the start of the case, Petitioner repeatedly contacted his counsel and asked him to enter into a plea agreement to conclude his Twin Falls case.  The whole premise of Petitioner's desire to obtain a plea of two years concurrent in the Twin Falls case was to persuade the Cassia County Court to give only two, rather than three, years in that case.  While Petitioner wanted to quickly resolve his case, the reason behind the quick resolution was to obtain a two-year sentence to influence the other pending case.

While Petitioner was perhaps harboring an unrealistic view of his case in believing that he could get the prosecutor to agree to a better offer than the prosecutor's original offer, it was clearly counsel's duty to make sure that Petitioner understood (1) that the hoped-for plea agreement did not materialize, and (2) exactly what his remaining options were. *See Nunes v. Mueller*, 350 F.3d 1045, 1053 (9th Cir. 2003) (the Ninth Circuit agreed that the right Petitioner claimed he lost "was not the right to a fair trial or the right to a plea bargain, but the right to participate in the decision as to, and to decide, his own fate.").  Here, Plaintiff's trial theory was

to argue that his crime was only petit theft because he entered the Target store to purchase a notepad without the intent to steal the DVDs. *See State v. Bull*, 276 P. 528 (Idaho 1929) (the distinguishing factor in felony burglary versus larceny (or grand theft) is whether the intent to steal was formed prior to or after entry onto the premises). Thus, Plaintiff was not entirely without a defense or trial strategy.

Accordingly, the Court concludes that Petitioner has shown prejudice in that he would not have accepted the plea agreement and would have proceeded to trial had he known no plea agreement was in place. (Exhibit 7, p.1 ("[I]f I knew that the deal was off, I would of [sic] not ever plead [sic] guilty to this crime."). In addition, it appears that Respondent has conceded prejudice in the event that the Court concludes that deficient performance existed. (Respondent's Post-Hearing Brief, Docket No. 64, p. 7.)

**B.    Deferential Review under §2254(d)(2)**

As set forth above, *Strickland v. Washington* is clearly-established law governing the ineffective assistance of counsel issue. *Strickland* must be read together with *Hill v. Lockhart, supra; Brady v. United States, infra;* and other precedent governing the requisite voluntary and intelligent nature of pleas. In *Brady v. United States*, the Court observed:

> That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so-hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial-a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 28

397 U.S. 742, 748, 90 S.Ct. 1463, 1468-69 (1970) (guilty pleas will be upheld when "voluntarily and intelligently made by competent defendants with adequate advice of counsel"). The *Brady* Court also noted that "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney." *Id.*, 397 U.S. at 748 n.6, 90 S.Ct.at 1469 n.6.

Based on all of the foregoing facts, this Court concludes that the state court's rejection of Petitioner's ineffective assistance of counsel claim was unreasonable under both § 2254(d)(1) and (d)(2). First, the state court's factual determination was objectively unreasonable because the guilty plea form, together with the transcripts of the hearing, demonstrated that there was a serious miscommunication among the court, counsel, and petitioner, such that petitioner's guilty plea could not have been knowing and voluntary. The prosecutor's actions and words, contained in the state court record, add yet another layer of confusion among the central players. The state court  failed to allow Petitioner to develop the record in support of a claim that was plainly evident from the record.

Not only did Petitioner and counsel *not* have the same understanding of the original plea offer, they did they have the same understanding of the guilty plea form that was the basis of the constitutionality of the acceptance of the plea by the court. While the state trial court asked a few questions of Petitioner regarding his guilty plea at the change of plea hearing, the court primarily relied on the guilty plea forms, even though, according to the record, the court did not have an understanding of what the guilty plea forms actually contained. Because the presiding state judge did not know that the guilty plea form contradicted what Petitioner was saying, the court's questioning of Petitioner on this necessary constitutional ground  was futile, and certainly not

done with the "care and discernment" required of a court accepting a guilty plea, as described in *Brady, supra*. When Petitioner's counsel attempted to bring up Petitioner's misunderstanding at the sentencing hearing, the state court could have looked to the guilty plea form to discover the contradiction; yet, in a cursory fashion the state court "held" Petitioner to his answers in the guilty plea form--an act that is not reasonable given that Petitioner's answers *supported* his request to withdraw the plea. As a result of these obvious problems in the record, and the failure to allow Petitioner to develop the record, this Court concludes that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding under § 2254(d)(2).

Because ineffective assistance of counsel is a mixed question of law and fact, the next step is a § 2254(d)(1) review. The Court concludes that the state court unreasonably applied the governing Supreme Court precedent to the facts, resulting in a decision that warrants relief under § 2254(d)(1). Full development of the facts of this case shows that serious misunderstandings existed between Petitioner and his counsel that were not cleared up by counsel before Petitioner pled guilty, and that counsel made serious errors in advising Petitioner about the plea agreement and trial process, constituting seriously deficient performance. The state court was also unreasonable in determining that Petitioner did not show--or could not have shown with additional development of the record--a reasonable probability that he would have proceeded to trial had he known there was no plea agreement.

The Court gauges the "reasonableness" of the state court's decision against other similar circuit cases. *See Duhaime v. Ducharme*, 200 F.3d 597 (9th Cir. 1999) (a federal district court may use similar cases from the Ninth Circuit and other circuits to help determine whether

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 30

Supreme Court law on a particular subject is "clearly established" and whether a state court decision is within the scope of "reasonable" applications of Supreme Court law). None of the cases shows that the state court's decision here was reasonable given the almost total lack of communication between counsel and defendant. *See Nunes v. Mueller*, 350 F.3d at 1054 ("the state court's decision applied the law to the facts unreasonably because Nunes clearly made out a prima facie case of ineffective assistance of counsel under *Strickland*. With Nunes' claims being taken at face value as the state court claimed it had done, the factual scenario was (1) that Nunes' attorney gave him the wrong information and advice about the state's plea offer and (2) that if Nunes had instead been informed accurately, he would expressly have taken the bargain"); *cf. Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) (no prejudice where the written guilty plea agreement unambiguously informed defendant that the state retained the right to argue for a sentence of life without parole, and contrasting *Iaea v. Sunn*, 800 F.2d 861, 1003 (9th Cir. 1986), where the attorney's performance was deficient because the errors were "numerous and serious.").

For all of the foregoing reasons, the Court concludes that the state court decision in Petitioner's case is more than merely erroneous. *See Williams v. Taylor*, 529 U.S. 362, 389, 120 S.Ct. 1495, 1511 (2000). Here, after a thorough analysis of the facts and law, the Court is left "with a firm conviction that [the] judgment is infected by constitutional error." *Id.*, 529 U.S. at 389, 120 S.Ct. at 1511. In such case, habeas corpus relief is warranted.

## C.   Conclusion

With all of the foregoing in mind, the Court concludes that Petitioner prevails on his ineffective assistance claim under either a de novo or a deferential standard. This is only the third

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 31

time in many years that § 2254 non-capital habeas corpus relief has been granted in the United

States District Court for the District of Idaho,[4] a number which reflects the extremely high level

of regard for federal constitutional issues shown at every level of the state of Idaho court system.

Here, the trial court's goal of providing a comprehensive set of written tools to aid defendants in

their understanding of the important consequences of pleading guilty is commendable. However,

in this particular instance, circumstances combined to create an injustice. It is to be noted that

Mr. Hansen showed considerable integrity and courage acknowledging his error and voicing

regret at the evidentiary hearing. Similarly, counsel for Respondent has not only advocated

particularly well for the State, but in a most commendable manner as he treated this case with an

eye toward justice, conceding prejudice in the event that this Court found deficient performance

during the trial court proceedings.

The law is clear that when the *Strickland* prejudice prong is met, there is no need to

conduct an additional harmless error review to grant habeas corpus relief. *See Avila v. Galaza*,

297 F.3d 911, 918 n.7 (9th Cir. 2002). Accordingly, Petitioner is entitled to habeas corpus relief.

## VII.

## RECONSIDERATION OF CLAIM ONE(b)

Claim One(b) is that Petitioner's guilty plea was involuntary because he misunderstood

the terms of his guilty plea. Petitioner also for reconsideration of this Court's decision that the

claim is procedurally defaulted. (Docket Nos. 17 & 26.) Having reviewed the record again, the

Court is still of the well-formed view that the claim is procedurally defaulted. On direct review,

Petitioner was represented by new counsel. Petitioner argued that the state court sentencing judge

---

[4] *See Manning v. Foster*, CV96-118-S-EJL; *Grube v. Blades*, CV01-357-S-BLW.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 32

abused his discretion in not allowing Petitioner to withdraw his guilty plea based on the timing of the request to withdraw under Idaho Criminal Rule 33(c). Petitioner relied on state case law and did not cite the Fourteenth Amendment or even mention "due process." (State's Lodging B-1.) The Idaho Court of Appeals likewise cited no federal case law and did not mention any federal ground for its decision. (State's Lodging B-3.)

On post-conviction review, again through counsel, Petitioner presented this claim to the Idaho Court of Appeals only as an ineffective assistance of counsel claim. (State's Lodging D-1.) The Idaho Court of Appeals treated it as such, but believing that it was the same claim presented on direct appeal, relied on its prior opinion (which itself relied on state law, as discussed above). (State's Lodging D-5.) Because Petitioner has not shown proper cause and prejudice or a miscarriage of justice for the default of this claim, the Court concludes that this claim is subject to dismissal with prejudice.

## VIII.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1) is GRANTED. Petitioner shall be released no later than 120 days from the date of this Order unless he has been retried on the charges or he is continuing to serve a sentence on a different conviction.



DATED: September 30, 2008

Honorable Larry M. Boyle
Chief United States Magistrate Judge

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER 33